UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN Q. GALE and<br>GALE & KOWALYSHYN, LLC, on behalf of<br>themselves and others similarly situated,<br>    Plaintiffs,<br><br>    v.<br><br>CHICAGO TITLE INSURANCE<br>COMPANY, *et al.*,<br>    Defendants. | :<br>:<br>:<br>:<br>:    3:06-cv-1619 (CFD)<br>:<br>:<br>:<br>:<br>:<br>: |

## RULING ON MOTION FOR CLASS CERTIFICATION

**I.    Introduction**

Plaintiffs ask the Court to certify the proposed class for their claims for declaratory and injunctive relief, and for damages under several Connecticut statutes regulating who may serve as a title insurance agent in Connecticut. Plaintiffs propose the following class definitions:

> **Sub-Class 1:** All persons who, at any time during the period October 17, 2003 to the present ("Class Period") were (a) Connecticut-licensed attorneys in good standing and/or (b) individuals who held a valid title insurance license on or before June 12, 1984, and (c) who, whether individually or through a partnership, corporation, or other business entity authorized to do business in Connecticut as a law firm or that held a valid title insurance license on or before June 12, 1984 and had "grandfathered-in" status as a licensed title agent company on or before June 2, 1996, were authorized in writing by a title insurer to solicit title insurance business, collect title insurance premiums, determine the insurability of a risk, or issue title policies in Connecticut.

> **Sub-Class 2:** All partnerships, corporations, or other business entities (a) authorized to do business in Connecticut as a law firm and/or (b) that held a valid title insurance license on or before June 12, 1984 and had "grandfathered-in" status as a licensed title agent company on or before June 2, 1996, and (c) through which, at any time during the Class Period, Connecticut-licensed attorneys or individuals who held a valid title insurance on or before June 12, 1984 were authorized in writing by a title insurer to solicit title insurance business, collect title premiums, determine the insurability of a risk or issue title policies in Connecticut.

## II. Background

Gale is a licensed attorney living in Connecticut. For many years, Gale has had a real estate practice in which he represents sellers, buyers, and lenders in residential and commercial real estate transactions. Since 1981, he has been a licensed title agent for Connecticut Attorneys Title Insurance Company ("CATIC"), a title insurance company that is owned and controlled by attorneys and operates primarily through lawyers who issue title policies. The second named plaintiff is Gale & Kowalyshyn, LLC, a Hartford law firm that is a shareholder and active member of CATIC. Defendants are ten national underwriters of title insurance policies issued in residential and commercial real estate transactions.

Title insurance is designed to guarantee clear ownership of real property and insures against defects in title. Title agents, such as Gale, solicit title insurance business, collect title insurance premiums, determine the insurability of a risk, and issue title policies. At closing, a title insurer typically issues a "closing protection letter" to the mortgage lender, indemnifying the lender against any losses incurred as a result of fraud or mistake by the title agent.

The central issue in this case is the meaning of a provision of the Connecticut Title Insurance Act, Conn. Gen. Stat. § 38a-402(13), which provides:

> "'Title agent' or 'agent' means any person authorized in writing by a title insurer to (a) solicit title insurance business, (B) collect premiums, (C) determine the insurability of a risk in accordance with underwriting rules and standards prescribed by the title insurer or (D) issue policies of the title insurer. *No person may act as a title agent unless he is a commissioner of the Superior Court in good standing, except any individual who held a valid title insurance license on or before June 12, 1984.*" (Emphasis supplied.)

In recent years, "closing service vendors" have supplanted Connecticut attorneys at many real estate closings, and execute tasks such as performing title examinations, issuing title

opinions, preparing closing documents, providing notary services, and filing documents with town clerks—actions which had traditionally been performed by Connecticut attorneys or grandfathered-in individuals. Despite the statutory requirement that only attorneys may act as title agents, title insurance companies such as the defendants have responded to the growth of these closing service vendors by entering into title agency agreements with them, authorizing them to write title insurance for their companies in Connecticut. Title insurance companies have also allegedly been issuing closing protection letters to lenders on behalf of these closing vendors. Plaintiffs argue that through these arrangements, closing service vendors are "acting as title agents" in violation of §38a-402(13).

Plaintiffs argue in order to satisfy the requirements of the statute, title insurance companies may only engage title agents (who must be Connecticut lawyers) directly or through law firms, not through other business entities such as closing service vendors. The reason for this, plaintiffs argue, is that by hiring a law firm to provide title agents, the insurance companies are assured that only lawyers will perform the title agent work, and that only the lawyer will receive the commission or fee.[1]

---

[1] Conn. Gen. Stat. §38a-414 reads in part:
(a) No title insurer or title agent shall (1) pay, directly or indirectly, to the insured, to any producer of title insurance business, to any associate of a producer or to any other person other than another title agent, any commission, any part of its premiums, fees or other charges or any other consideration or thing of value as inducement or compensation for the referral of title insurance business or (2) issue any title insurance policy in connection with any transaction in which it has paid or intends to pay any commission or any part of its premiums, fees or other charges, or any other consideration or thing of value which it knows to be in violation of this section.
(b) No insured named in a title insurance policy, no producer of title insurance business, no associate of a producer, nor any other person, other than another title agent, may knowingly receive or accept, directly or indirectly, any commission, rebate, consideration, thing of value or inducement referred to in subsection (a) of this section.

Defendants argue that their arrangements with closing service vendors do not violate Connecticut law, because closing service vendors have Connecticut-licensed attorneys ultimately sign the policies. For example, some companies reminded their agents working in Connecticut that those who were not Connecticut-licensed attorneys were prohibited from issuing policies in Connecticut, but could provide "back office support and processing" for a Connecticut-licensed attorney who "served as a counter-signing agent." See Defs.' Mem. In Opposition 4–6, ECF No. 215. Defendants argue these practices satisfy the requirements of §38a-402(13).

Plaintiffs argue that the defendants' decision to utilize closing service vendors has resulted in significant reductions in this practice area for Connecticut lawyers and the creation of unlicensed, illegal title agents. As a result of the defendants' practices, the putative class of Connecticut attorneys has been deprived of a practice area that was statutorily reserved for them, and has excluded them from serving as title agents, causing them to lose revenues. Plaintiffs also allege substantial public harm from this development. The plaintiffs and the putative class contend that if the Court does not enjoin the defendants from hiring non-attorneys to serve as title agents, they the public will continue to be harmed by this "deceptive and illegal practice."

This lawsuit was filed in October 2006, seeking declaratory and injunctive relief, as well as compensatory and punitive damages, for violations of the Connecticut Unfair Trade Practices Act ("CUPTA"), for tortious interference with business expectations, and for violations of the Connecticut Unfair Sales Practices Act ("CUSPA"). Plaintiffs now move to certify the class.

### III. Applicable Law and Discussion

The district court must determine through "rigorous analysis" that all Rule 23 requirements are met in order to certify the class. In re Initial Public Offering Sec., 471 F.3d 24,

40 (2d Cir. 2006). That a Rule 23 requirement overlaps with a merits issue does not prevent the court from making a determination as to whether the requirement has been met. See id. at 41. However, in assessing whether the requirements have been met, the court should not assess any aspects of the merits unrelated to a Rule 23 requirement. See id. (noting that the class certification proceeding should not turn "into a protracted mini-trial of substantial portions of the underlying litigation").

To be certified as a class, the class must satisfy four main requirements: the class must be so numerous that joinder of all members is impracticable ("numerosity"); there must be questions of law or fact common to the class ("commonality"); the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and the representative parties will fairly and adequately protect the interests of the class ("adequacy of the representation"). Fed. R. Civ. P. 23(a). Additionally, the class must satisfy one of the requirements of 23(b). Here, the plaintiffs are proceeding under Rule 23(b)(2), which permits certification of the class if "the party opposing the class has acted or refused to act on grounds generally applicable to the whole class, thereby making appropriate final injunctive relief with respect to the class as a whole." In the alternative, if the Court does not find the plaintiffs have met the requirement of 23(b)(2), they seek certification under 23(b)(3), which provides that a class may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

    A.    **Rule 23(a)**

### 1. Numerosity

The United States Court of Appeals for the Second Circuit has held that "numerosity is presumed at a level of 40 members." Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs argue the proposed class satisfies the numerosity requirement because they have identified at least forty members of the proposed sub-classes. To do this, plaintiffs reviewed the defendant companies' lists of Connecticut title agents. Those lists show names of hundreds of corporate entities that plaintiffs believe are "illegal agents." Those lists also show the names of at least ninety individuals that are Connecticut-licensed attorneys, whom plaintiffs categorize as "legal agents" in sub-class 1, and the names of at least ninety-one registered Connecticut law firms that plaintiffs categorize as sub-class 2.

The defendants do not argue that the proposed class is not numerous, but argue that the numerosity requirement cannot be satisfied because the size of the class cannot be ascertained. "Although not specifically mentioned in the rule, an essential prerequisite of an action under Rule 23 is that there must be a 'class.'" 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §1760 (3d ed. 2010). See also, In re Initial Public Offerings, 471 F.3d at 30 (referring to the "implied requirement of ascertainability"). The defendants argue the class is not ascertainable for two reasons: first, because the plaintiffs' distinction between "legal agents" and "illegal agents" is premised on an incorrect legal assumption, and second, because members of the class cannot be identified through objective criteria.

The defendants question the premise on which the plaintiffs would distinguish between class members and "illegal agents." The defendants characterize the plaintiffs' argument in the

following way: non-law firm entities that perform title insurance work in Connecticut are "illegal agents" because they are engaged in the "practice of law," which is illegal for non-lawyers to do. Defendants argue the tasks assigned to title agents by statute—soliciting title insurance business, collecting premiums, determining the insurability of a risk, or issuing policies of the title insurer—do not constitute the practice of law, so the plaintiffs' distinction is meaningless. But the defendants misinterpret the plaintiffs' argument. Plaintiffs do not contend that those tasks are the "practice of law," but rather that 38a-402(13) provides that only attorneys may perform those tasks. Plaintiffs interpret 38a-402(13) as requiring only lawyers to perform all those functions, and allege that the defendant companies use closing service vendors to perform some or all of that work.

At this stage, the Court need not decide which interpretation of the statute is correct. The correct interpretation of this provision of Connecticut law is a question common to all members of the purported class, and the fact that it remains unresolved at this stage of the litigation does not mean a class is unascertainable. Plaintiffs have identified ninety lawyers and ninety-one law firms who do title insurance work in the state, and wish to certify them as a class to challenge defendants' interpretation of the Connecticut Title Insurance Act. Even if the plaintiffs have an incorrect legal theory, the class is ascertainable.

The defendants also argue the members of the class cannot be identified by objective criteria. However, a comparison of this case with one of the cases on which the defendants rely for this argument, Mike v. Safeco Ins. Co. of America, 223 F.R.D. 50 (D.Conn. 2004), illustrates why the defendants are incorrect. In Mike, the court ruled that the proposed class was untenable because it was defined as those Safeco employees "whose primary duties were to appraise

damaged automobiles." Id. at 53. The court determined that to determine which employees had those specific primary work duties would require "an ad hoc inquiry for each proposed plaintiff." Id. "The reason why Mike's proposed class cannot be certified is . . . that Mike has not identified any basis, such as a Safeco company policy carving out a sub-class of non-exempt employees, for the court to conclude that other employees are similarly situated to Mike." Id. By contrast, the plaintiffs in this case have identified a method—at least a rudimentary one—for identifying class members in this case. Plaintiffs have searched the lists of title agents published by the defendant companies, and determined which are Connecticut-licensed attorneys and which are Connecticut law firms. These attorneys and law firms would be members of the class. This class would not have to be determined on an ad hoc, member-by-member basis, as was the case in Mike.

Because the class is ascertainable, and because plaintiffs have identified over 40 members of the proposed class, the numerosity requirement is satisfied.

### 2. Commonality

"Under Rule 23(a)(2), a class action is maintainable if there are common questions of law or fact." Collins v. Olin Corp., 248 F.R.D. 95, 101 (D. Conn. 2008). To satisfy commonality, these common questions need not overshadow potential individual issues; common questions must simply exist. See id. Plaintiffs argue the common questions in this case include: whom defendants may engage as title agents under Connecticut law; through what entities the defendants may engage those title agents; and whether defendants may issue closing protection letters or otherwise indemnify lenders against non-attorney title agents.

The defendants argue the plaintiffs have failed to meet the commonality requirement because the class-wide questions will not generate class-wide answers. For example, defendants

argue that whether class members had a business expectancy of being able to serve as title agents for the defendant companies will require an individualized determination for each plaintiff. They argue that even if the same set of questions must be asked about each class member, commonality is not satisfied because those questions will have to be answered on an individual basis, because the circumstances of each title agent are different.

But this argument misunderstands the commonality requirement of Rule 23. The need for some individualized inquiries does not defeat the commonality requirement. "The test for commonality is not demanding and is met so long as there is at least one issue common to the class." In re PE Corp. Sec. Litig., 228 F.R.D. 102, 108 (D. Conn. 2005) (Droney, J.) (internal citations and quotations omitted). The central issue in this case is whether defendants are violating Connecticut law by employing the title agents they currently use. The answer to that question affects the rights of all the members of the proposed class. Therefore, the plaintiffs have established the element of commonality.

### 3. Typicality

"Typicality requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 155 (2d Cir. 2001) (internal quotations omitted). "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)." Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997).

Here, plaintiffs argue they satisfy the typicality requirement because the same course of

events—defendants' use of closing service vendors—give rise to their claims, and each class member argues that this is a violation of Connecticut law. Defendants respond that the claims do not arise from the same course of conduct because each of the defendants (there are ten companies) has different practices, clients, and agents. They argue the potential liability of each defendant, therefore, does not arise from the same course of conduct. In support of this argument, defendants rely on Ball v. Union Carbide Corp., 385 F.3d 713 (6th Cir. 2004). In that toxic tort case, the putative class sued businesses with private government contracts, as well as the Secretary of the U.S. Department of Energy, and the Administrator of the National Nuclear Security Administration. The court said that since there were "multiple defendants with presumably differing liability levels . . . accordingly, there is no single course of conduct." Id. at 728. That case is distinguishable from this one, since there are no individual defendants in this case, such as the Secretary or Administrator. All the defendants here are title insurers with the same relationship to the putative class and have the same obligations under Connecticut law.

### 4. Adequacy of Representation

To determine whether the representation is adequate, the court typically inquires whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 99 (2d Cir. 2007). This inquiry serves to identify any conflicts of interests between the named plaintiffs and the remainder of the potential class. Collins v. Olin Corp., 248 F.R.D. 95, 102 (D.Conn. 2008) (Droney, J.). Plaintiffs' argue their interests are directly aligned with those of the class, and their counsel have substantial experience in class action litigation.

While the defendants do not question the experience and expertise of the plaintiffs' counsel, they do argue plaintiffs have failed to meet the adequacy prong for several reasons. First, they argue that plaintiff Gale & Kowalyshyn, LLC cannot be a member of the class, and therefore cannot represent the class. In support of this argument, defendants rely on a 1999 ruling from the Connecticut Insurance Department ("CID"), <u>In the Matter of Petitions for Declaratory Relief Filed by Connecticut Attorneys Title Ins. Co. and First Am. Title Ins. Co.</u>, Docket LI 98-61, (Connecticut Insurance Dep't June 11, 1999) (referred to as "<u>Kelsey</u>," referencing a defendant in the administrative proceeding). The <u>Kelsey</u> decision sought to clarify the 1996 amendments to the Connecticut Title Insurance Act. One effect of those amendments was to change the definition of "title agent" in Conn. Gen. Stat. §38a-402 to read, "No person may act as a title agent unless he is a commissioner of the Superior Court in good standing, except any *individual* who held a valid title insurance license on or before June 12, 1984." (Emphasis supplied.) Although only natural persons could be commissioners of the court, before 1996, grandfathered-in *companies* had also continued to act as title agents. The question in <u>Kelsey</u> was whether the phrase "any *individual* who held a valid title insurance license on or before June 12, 1984" now precluded grandfathered-in companies from serving as title agents. The Insurance Department ruled that it did. After 1996, only natural persons could be "title agents," and grandfathered-in companies could only conduct title agent functions *through* either licensed Connecticut lawyers or grandfathered-in individuals. Relying on <u>Kelsey</u>, the defendants argue that since Gale & Kowalyshyn is not a person nor an individual, the firm cannot be a "title agent," and assume plaintiffs are seeking to certify a class that consists only of title agents. But this argument relies on a misinterpretation of the plaintiffs' second proposed sub-class. While the

first sub-class obviously consists of individual attorneys who serve as title agents, the second proposed sub-class consists of "partnerships, corporations, or other business entities . . . *through which*" title agents perform title agent functions. Plaintiffs are seeking to certify as class members both individuals who may serve as title agents, and the law firm through which they work. Kelsey acknowledged that "law firms . . . must conduct their title agent business through individuals who are either commissioners of the Superior Court or who are grandfathered." See Kelsey at 13. Therefore, Gale & Kowalyshyn can be members of the class (specifically of the second sub-class), and defendants' first argument against satisfaction of the adequacy prong fails.[2]

Second, defendants argue the named plaintiffs here are subject to unique defenses rendering them inadequate to represent the class. Specifically, defendants allege that John Gale and Gale & Kowalyshyn are subject to the "unclean hands" defense because they themselves are in violation of the Connecticut Title Insurance Act. The Act prohibits title agents from paying any commission or any part of fees to anyone else "for the referral of title insurance business," or from issuing any title insurance policy in connection with any transaction in which "it has paid or intend to pay any commission or any part of its premiums, fees or other charges." Conn. Gen. Stat. §38a-414. At his deposition, Gale conceded that when he receives a commission, he deposits it into the general operating account of Gale & Kowalyshyn. Defendants argue this co-mingling of Gale's commissions with the firm's funds means the two are in violation of the Act.

---

[2]Defendants are correct to point out, however, that members of the second sub-class cannot be "legal agents." Kelsey made clear that "a law firm can not [sic] be a title agent, because the firm itself is not a commissioner of the superior court and can not be considered to be a grandfathered individual." Kelsey at 13. Any references to members of the second sub-class as "legal agents" (see, for example, Pls' Mem. 2) is imprecise.

First, however, the defendants' argument misinterprets the Act. The Act is meant to prohibit referral fees and kickbacks, not to prevent lawyers from using their firm bank accounts. Gale would only be violating the Act if he was paying his own firm for the referral of title agent business, which is not what defendants allege. Second, defendants allege that other purported class members are also subject to this unclean hand defense for sharing commissions with other entities. See Defs.' Mem. In Opposition 40–41, ECF No. 215. If so, the correct interpretation §38a-414 becomes a common question, rather than a reason the plaintiffs are inadequate class representatives. Therefore, this second argument against adequacy also fails.

Third, the defendants argue the circumstances surrounding the inception of this lawsuit suggest plaintiffs and their counsel have conflicts of interest with other members of the class. Defendants argue this litigation is "the conceptual brainchild of Plaintiffs' counsel executed by and through CATIC, a non-party and direct competitor of Defendants." Id. at 49. Defendants argue plaintiffs' loyalty to CATIC (through which plaintiffs perform title agent functions) makes them ill-suited to represent putative class members who do not share their unique circumstances, and that plaintiffs' alignment with CATIC suggests "this litigation is nothing more than a tool to achieve their idiosyncratic economic goals that other class members do not necessarily share." Id. at 51.

That plaintiffs may have a commercial relationship with one of defendants' competitors does not mean that they cannot fairly prosecute the case on behalf of their fellow class members. It may be true that CATIC and plaintiffs' counsel first conceptualized the lawsuit, and together selected John Gale and his firm to be lead plaintiffs, but that does not mean plaintiffs are antagonistic to other class members who do not work for CATIC.

Fourth, defendants argue that plaintiffs' counsel cannot adequately represent the class because they have a conflict of interest with some class members. These same attorneys have brought another putative class action in this district, Mahon v. Chicago Title Ins. Co., No. 09-cv-690 (AWT), which accuses numerous members of this putative class of wrongdoing in connection with their actions as title agents. That lawsuit against one defendant—Chicago Title—accuses the company of overcharging customers for their title insurance. Putative members of this class have been subpoenaed for documents and deposition testimony in connection with the Mahon case. The Mahon suit seeks to enforce §38a-419(c) which obliges title insurers to apply the premiums and discounts listed in their rate manuals, while this suit seeks to enforce §38a-402(13) which defines who may serve as a title agent.

The distinction between the underlying issues means there is no conflict between these two lawsuits, plaintiffs argue. "In order for a conflict to necessitate a denial of class certification, it must jeopardize the interests of class members. If their interests can be protected by court supervision, by opting out, by the creation of subclasses, or even by the defendant, the conflict should not preclude a class action." 1 Newberg on Class Actions §3:31 (4th ed. 2010). In this case, the rights of potential class members are not jeopardized if they are deposed or give evidence about the rates charged by title insurers, and simultaneously are members of this class seeking to ensure that only Connecticut-licensed attorneys serve as title agents.

For these reasons, the adequacy prong of Rule 23(a) has been met. Class certification is warranted under Rule 23(a), and the court now turns to a discussion of the Rule 23(b) requirements.

B.      Rule 23(b)

Plaintiffs seek certification under Rule 23(b)(2), or, in the alternative, Rule 23(b)(3). "Where plaintiffs would qualify for class certification under both subsections, a class 'should be treated as if it had been brought exclusively' under Rule 23(b)(2)." Haddock v. Nationwide Fin.l Serv., Inc., 262 F.R.D. 97, 120 (D.Conn. 2009) (quoting 7AA Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, §1784.1 (3rd ed. 2005).

1.      Rule 23(b)(2)

Rule 23(b)(2) provides that an action may be maintained as a class action if, in addition to the four threshold requirements discussed above, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). Importantly, (b)(2) class treatment is not appropriate in cases where money damages are the predominant form of relief sought. See Fed.R.Civ.P. 23(b)(2), advisory committee note (1966). However, (b)(2) class treatment is not foreclosed if plaintiffs are seeking some combination of both non-incidental money damages and declaratory or injunctive relief.

In Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147 (2d Cir. 2001), the Second Circuit explained how a district court should evaluate under Rule 23(b)(2) a motion for class certification seeking both forms of relief. Describing an "ad hoc" approach, the court said a district court must "assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all of the facts and circumstances of the case." Id. at 164. A court may grant a motion for (b)(2) certification if it finds that the injunctive relief is the predominant relief sought, and class treatment would be efficient and manageable. Id. When

-15-

determining which form of relief predominates, the district court should satisfy itself that "(1) even in the absence of a possible monetary recovery, reasonable plaintiffs would bring the suit to obtain the injunctive or declaratory relief sought; and (2) the injunctive or declaratory relief sought would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits." Id.

Here, plaintiffs are seeking a declaration from the court that defendants are obligated to use Connecticut attorneys or grandfathered-in individuals as title agents, and a preliminary and permanent injunction prohibiting defendants from using persons other than Connecticut attorneys or grandfathered-in individuals as title agents. Plaintiffs would seek to obtain such relief even in the absence of money damages, because going forward, their business opportunities would be enhanced by a declaration requiring defendants to employ class members as title agents. Also, if plaintiffs were to succeed on the merits, the declaratory relief would be necessary. Defendants do not directly contest (b)(2) certification, and do not argue that damages relief predominate over injunctive or declaratory relief. Instead, they argue that damages cannot be apportioned on a class-wide basis, but that is not necessarily a reason for a court to deny (b)(2) certification. "[A]ny due process risk posed by (b)(2) class certification of a claim for non-incidental damages can be eliminated by the district court simply affording notice and opt out rights to absent class members for those portions of the proceedings where the presumption of class cohesion falters—i.e., the damages phase of the proceedings." Id. at 166. For these reasons, the plaintiffs have met the requirements for certification under Rule 23(b)(2). As a result, the court need not analyze the alternative arguments for certification under Rule 23(b)(3).

### C. Defendants' Additional Arguments

Defendants devote a portion of their brief to arguing that the class cannot be certified because Gale and Gale & Kowalyshyn lack standing, and therefore cannot bring a class action. Defendants argue the named plaintiffs have not suffered any injury as a result of defendants' conduct. This argument ignores the law of this case. On August 21, 2008, this Court ruled on the defendants' motion to dismiss, finding that Gale had both Article III standing and statutory standing under CUPTA. The Court noted that "[w]hether Gale can actually prove that any losses suffered were as a result of the defendants' conduct is a question more appropriately resolved at the summary judgment stage or at trial." Ruling 8, ECF No. 96. This argument also misunderstands the standard for class certification. It is "settled that the named plaintiff need not demonstrate a probability of success on the merits or show in advance that he or suffered damages in order to serve as the class representative." 1 Newberg *supra*, §3:29.

The defendants also argue the class cannot be certified because the putative class lacks standing. Defendants argue that before certifying the class this Court must determine which class members have suffered damages. "But putting the cart before the horse in that way would vitiate the economies of class action procedure; in effect the trial would precede the certification. It is true that injury is a prerequisite to standing. But as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." Kohen v. Pacific Inv. Management Co. LLC, 571 F.3d 672, 676 (7th Cir. 2009) (citing United States Parole Commission v. Geraghty, 445 U.S. 388, 404 (1980)).

## IV. Conclusion

For the reasons set forth above, the plaintiffs' motion for class certification [Dkt. # 209] is GRANTED.

SO ORDERED this 23rd day of March 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY
UNITED STATES DISTRICT JUDGE**